## STATE EX REL. COUNTY OF MORRISON v. CHARLES M. BABCOCK.[1]

November 21, 1924.

No. 24,234.

**Act of 1923 not mandatory on State Highway Commissioner.**

    After the county seat of Mille Lacs county was changed from Princeton to Milaca, the legislature enacted chapter 358, Laws 1923, adding a new route to the state trunk highway system. It did not begin, terminate or pass through Milaca, but it did intersect another trunk highway at a point 22 miles distant from Milaca. *Held* that section 1 of article 16 of the state Constitution does not authorize the attempted addition to the trunk highway system and that the State Highway Commissioner cannot be compelled to select public highways in obedience to chapter 358.

Upon the relation of the county of Morrison the district court for Ramsey county granted its alternative writ of mandamus directed to Charles M. Babcock, Commissioner of Highways, commanding him to locate trunk highway known as Route No. 71. From an order sustaining a demurrer to the petition and writ, Olin B. Lewis, J., relator appealed. Affirmed.

[1]Reported in 200 N. W. 843.

*D. M. Cameron*, County Attorney, and *C. Rosenmeier*, special counsel, for appellant.

*Clifford L. Hilton*, Attorney General, and *G. A. Youngquist*, Assistant Attorney General, for respondent.

LEES, C.

The relator obtained an alternative writ of mandamus from the district court of Ramsey county requiring the respondent to locate the trunk highway designated by chapter 358, p. 516, L. 1923, as Route No. 71. Respondent's demurrer to the writ was sustained and the relator has appealed.

It appears from the writ that at the time of the adoption of article 16 of the state Constitution, popularly known as the good roads amendment, Princeton was the county seat of Mille Lacs county, and that after the amendment was adopted and prior to January 2, 1923, the county seat was changed to Milaca.

The respondent refused to designate as a temporary trunk highway any of the roads which follow the same general course as Route 71. His refusal was based solely on the ground that chapter 358 is unconstitutional. The trial court held that the refusal was justifiable, because Route 71 does not connect Milaca with another county seat, within the meaning of article 16.

By section 5, article 9, of the Constitution, the state is prohibited from carrying on any works of internal improvement and from contracting any debt for such works.

In Cooke v. Iverson, 108 Minn. 388, 122 N. W. 251, 52 L. R. A. (N. S.) 415, it was held that the term "works of internal improvement" includes public highways, and that the prohibition prevents the state from appropriating moneys from the general revenue fund to aid in the construction and repair of highways and bridges. At the time of the decision, section 16, article 9, of the Constitution, provided for the creation of a state highway commission and authorized the legislature to levy a state tax of one-twentieth of a mill for the purpose of constructing and improving roads and bridges, and the court pertinently remarked that, by adopting section 16 as an amendment to the Constitution, it was plain that the people had

not originally given the legislature a free hand in dealing with public highways, for, if they had, there was no necessity for the amendment. Later, section 16 was amended by abolishing the highway commission and by fixing the maximum state tax for highway purposes at one mill. Save for these amendments, section 5, article 9, was in force when the so-called good roads amendment was adopted. This amendment created a state trunk highway system of 70 routes specifically designated. It forbade deviations from the starting points or terminals of these routes and provided that they should pass through numerous cities and villages named in the amendment.

Provision for additional routes was made in the last two paragraphs of section 1, article 16. In the first of these, authority for the enactment of chapter 358 must be found, if it can be found at all. It reads thus:

"Whenever, either by reason of the creation of a new county, or by reason of the change of the county seat of any existing county, any city or village not a county seat at the time of the adoption of this amendment is lawfully constituted the county seat of any county, the legislature is authorized to add to the trunk highway system such additional routes connecting such newly constituted county seats with other county seats and other points in the state."

Route 18, as described in article 16, begins at Elk River and terminates at a point on Route 2 east of Brainerd.

Route 23 begins at Paynesville and terminates at a point on Route 1 near Hinckley.

Both routes pass through Milaca. Route 71 does not. It intersects Route 18 some 22 miles north of Milaca. It does not stop at the intersection, but continues on to Route 5, where it terminates at or near McGrath.

The inquiry then is whether Route 71 is an addition to the state trunk highway system which connects Milaca with other county seats and other points in the state. If it is, the legislature had authority to add it to the trunk highway system.

When Milaca became the county seat, it was connected with the system, being on a north and south and on an east and west route.

Princeton, the former county seat, was on the north and south route only. It was less favorably located than the newly-constituted county seat.

It is argued that, whenever a new county seat is established, the legislature may give it additional connections with the trunk highway system, regardless of the fact that it is on one or more of the routes designated by article 16. We express no opinion as to this. It is unnecessary to do so. We base our decision on another ground. It is our opinion that the word "connecting," as used in article 16, means directly connecting. In other words, the additional highway must be a link in the chain by which county seats are united. It must begin or end at, or pass through, the new county seat. Route 71 does not touch Milaca. It is a direct connection between Little Falls and McGrath and intermediate points. The fact that on its course it comes to Onamia, 22 miles north of Milaca, and intersects the trunk highway which extends through Onamia and Milaca is not sufficient to warrant a holding that it connects Milaca with Little Falls and with other points in the state. Such a holding would logically lead to the conclusion that any trunk highway which intersected Route 18 or Route 23 anywhere would connect Milaca with other county seats and other points in the state and that the legislature, if so minded, might attach roundabout routes to the highway system created by the Constitution. We are convinced that such was not the purpose of the people when they adopted article 16, which embodies a carefully worked out plan and is designed to avoid the consequences which would follow if the legislature should be inclined to enlarge the system in response to the demands of people not satisfied with the location of the 70 routes designated.

Appellant makes the point that the establishment of public highways is a matter with which the legislature may deal at pleasure by virtue of its inherent powers. In the absence of constitutional prohibitions, this may be true. But the framers of our Constitution saw fit to set bounds to the power of the legislature in this regard. Originally there was a complete withdrawal of power, expressed in the prohibition of the creation of state indebtedness

for works of internal improvement and in the mandate that the state should never become a party to the carrying on of such works. By the recent amendments the stringency of the prohibition has been somewhat relaxed, but, subject to the modifications of the amendments, it still stands as a barrier to the free exercise of legislative power. For this reason we are not at liberty to consider the scope of the inherent power of the legislature to establish public highways. From the beginning the people of the state have closely confined the power and it must be viewed in the light of the continued purpose to keep it within narrow bounds. Chapter 358, p. 516, L. 1923, concludes with these words:

"That all of the provisions of law relating to the state trunk highway system shall apply to the trunk highway route hereby created and established."

The good roads amendment requires the state to construct, improve and maintain the state trunk highways. Funds for the purpose are secured from a tax on motor vehicles and may be increased by bond issues. If bonds are issued and the vehicle tax is not sufficient to pay them, a state tax may be levied to meet the deficiency. The result is that every addition to the state trunk highway system imposes an additional burden upon the state, for the towns and counties concerned are freed from obligation to improve and maintain roads taken into the system. When the state begins to perform its duty to improve such a road, it becomes a party to a work of internal improvement and this is forbidden save as authorized by the people in the constitutional amendments to which we have referred. The conclusion follows that the state is powerless to build or maintain roads, or to levy taxes or issue bonds for road purposes, except as authorized by the Constitution, and that resort to the inherent powers of the legislature cannot be had to sustain its attempted exercise of authority not granted by the Constitution.

The writ states that Route 71 connects Milaca with Little Falls and with other county seats and other points in the state. It is argued that since a demurrer admits all the facts well pleaded, the lower court was not at liberty to hold that the road is not such a

connection as is authorized by article 16. The facts well pleaded are that the county seat of Mille Lacs county was changed and the new route located as set forth in chapter 358. Whether it connects the new county seat with other county seats is not a question of fact, but one of law, and hence the statement in the writ is in the nature of a conclusion of law not admitted by demurrer.

Order affirmed.