IRENE M. SCHMANSKI AND ANOTHER v. CHURCH OF ST. CASIMIR OF WELLS.[1]

December 10, 1954.

Nos. 36,351, 36,352.

_____
[1]Reported in 67 N. W. (2d) 644.

*Horan & Irvine* and *Plunkett & Plunkett,* for appellants.
*Meighen, Sturtz & Peterson,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order denying plaintiffs' motions for a new trial.

Actions were brought by Irene M. Schmanski and her husband, Andrew A. Schmanski, against The Church of St. Casimir of Wells, Minnesota. In her complaint Irene M. Schmanski alleges that on November 5, 1951, she was an invitee on the premises of St. Casimir's School, which was owned and operated by defendant, and that due to defendant's negligence in the operation and maintenance of the premises she was caused to fall and injure herself.

An examination of the record discloses that prior to November 5, 1951, Andrew A. Schmanski, as a member of the Knights of Columbus, arranged with defendant's parish priest to use the auditorium of the school for an organizational meeting. According to the arrangement, five dollars was to be paid and the hall was to be left in the same condition as when they took over.

Mrs. Schmanski testified that she was asked to prepare the lunch for the Knights of Columbus and was also asked to clean the kitchen

after the lunch was served and to leave it in the same condition as when she took over. She further testified that after the luncheon was over she decided to sweep the floors and was told by some men present that she could get a broom in the boiler room.

A floor plan of the building introduced by plaintiffs shows that the kitchen is separated from the boiler or furnace room by a corridor which runs north and south. The boiler room is on the west side of the corridor and is entered by passing through a small hallway about 11½ feet long running east and west.

Mrs. Schmanski said that there was a light in the corridor between the kitchen and the boiler room but that there was no light in either the small hall leading to the boiler room or the boiler room. She stated that as she entered the small hallway she found a light switch and "clicked" or tried to turn it on several times in order to light the hallway but did not get any light. She then proceeded into the boiler room, which was not lighted except for a reflection or light coming in the boiler room or basement windows by which she saw the handle of a broom on the wall. She next stated that after she had the broom and was about to return to the kitchen "at a glance I saw a man," but she did not recognize who he was, although it developed that he was the janitor whom she had known for some time. Upon seeing the man she turned to run back into the kitchen and, while trying to get out of the boiler room into the small hallway, "tripped over the broom in attempting to make the turn." She further stated that there are some steam pipes along the north wall of the small hallway which extend along the north wall of the boiler room about two feet above the floor.

At the close of plaintiffs' testimony, defendant moved for a directed verdict. In granting this motion, the trial judge told the jury that from the evidence in the case it appeared to the court that plaintiffs had failed to show that defendant was negligent in any manner proximately causing the injury in question to Mrs. Schmanski.

Plaintiffs claim on appeal that the trial court erred in directing a verdict at the close of their testimony. They call our attention to the legal principles that, in deciding on a motion for a directed ver-

dict at the close of plaintiffs' case, the court must view the evidence in the light most favorable to plaintiffs, citing Hanrahan v. Safway Steel Scaffold Co. 233 Minn. 171, 46 N. W. (2d) 243, and Woehrle v. Minnesota Transfer Ry. Co. 82 Minn. 165, 84 N. W. 791, 52 L. R. A. 348; also, that it is only in the clearest of cases, where the facts are undisputed and it is plain that all reasonable men can draw but one conclusion from them, that the question for determination becomes one of law for the court, citing Aubin v. Duluth St. Ry. Co. 169 Minn. 342, 211 N. W. 580, and Nygren v. Minneapolis St. Ry. Co. 241 Minn. 485, 63 N. W. (2d) 560.

Mrs. Schmanski contends that she was a business visitor or invitee. She argues in effect that the question whether or not defendant was negligent was a fact question on three different grounds: (1) That the electric construction of the building was grossly negligent; (2) that defendant failed to provide a light in the small hallway leading to the boiler room; and (3) that there was active negligence on the part of defendant's agent, the janitor. Defendant does not agree that the legal status of Mrs. Schmanski was that of invitee or business visitor but contends that in any event there was no negligence shown on the part of defendant.

While we agree with the legal principles cited above by plaintiffs with reference to a motion for a directed verdict, it is our opinion that defendant is right in its contention in that the record does not disclose sufficient evidence of negligence proximately the cause of Mrs. Schmanski's injuries to permit plaintiffs to maintain a claim against defendant. Therefore, for the purposes of this appeal we will assume that Mrs. Schmanski was an invitee or business visitor of defendant.

The basic elements necessary to maintain a claim for negligence are (1) duty; (2) breach of that duty; (3) that the breach of duty be the proximate cause of plaintiff's injury; and (4) that plaintiff did in fact suffer injury. Prosser, Torts, § 30, p. 177; Restatement, Torts, § 281; Knutson v. Lambert, 235 Minn. 328, 51 N. W. (2d) 580.

Our most recent decision on the duty owned by an owner or occupant of premises toward an invitee is Zuercher v. Northern Jobbing

Co. 243 Minn. 166, 66 N. W. (2d) 892. It was said in that case that the occupant of premises, although not an insurer of their safe condition, is bound to exercise ordinary or reasonable care to keep them in a safe condition for those who come upon them by his express or implied invitation. Such duty of reasonable care includes the duty of making the premises safe as to dangerous conditions or activities upon the premises of which the occupant knows or of which he ought to have knowledge in the exercise of reasonable care.

In Mayzlik v. Lansing Elev. Co. 241 Minn. 468, 473, 63 N. W. (2d) 380, 384, we said:

"* * * A possessor of premises used by business visitors, while not an insurer of their safety, is bound to exercise reasonable care to construct and to maintain his premises in a reasonably safe condition for their use. The duty is continuing in nature. It does not end with an original safe construction or installation but continues as long as the premises are devoted to such use. Reasonable inspection during such use is a duty incident to the maintenance of the premises."

In regard to the element of proximate cause, the rule is that legal responsibility for an accidental injury cannot be put upon anyone unless his act or failure to act was the proximate cause of the injury. Robinson v. Butler, 226 Minn. 491, 33 N. W. (2d) 821, 4 A. L. R. (2d) 143.

Probably the best definition of proximate cause set out by this court is the one given by Mr. Justice Mitchell in Christianson v. Chicago, St. P. M. & O. Ry. Co. 67 Minn. 94, 97, 69 N. W. 640, 641, when he said:

"* * * Consequences which follow in unbroken sequence, without an intervening efficient cause, from the original negligent act, are natural and proximate; * * *."

In regard to plaintiffs' first two theories of negligence, even though it might be said for the sake of argument that defendant had breached its duty in connection with the electrical construction of the building or by failing to have a workable light in the hall, it

is our opinion that those things still would not have been responsible for Mrs. Schmanski's injury. Our reason is that, under the record before us, we cannot see that such a breach of duty could be said to have been the proximate cause of the accident. While it is regrettable that this good woman should have suffered such an unfortunate injury while engaged in a gratuitous service, it is our opinion that the sole proximate cause of the accident, as shown by the record before us, was the fact that she tripped and became entangled in the broom as she attempted to leave the boiler room. At the time of the accident the broom was in her possession and under her exclusive control, and, under the facts and circumstances here, it is our opinion that there was no showing of any negligence on the part of defendant which could be said to be the proximate cause of the accident. Rather, it appears that, if Mrs. Schmanski had not become suddenly startled or frightened at the sight of the man's face, with her resultant hasty attempt to leave the boiler room, the accident would not have happened. She admits that when she stepped into the boiler room there was sufficient light or reflection from the basement windows to enable her to see the handle of the broom on the wall even though there was no other light. She further said that when she got the broom and was about to return to the kitchen she saw the man; that the light was not sufficient for her to recognize him; that she started to run; and that, in attempting to make the turn from the boiler room to the small hallway, she tripped on the broom.

There is only one inference to be drawn from the above facts. The light was sufficient for Mrs. Schmanski to see the broom as she stepped into the boiler room. She further had no difficulty in seeing well enough to walk over to the broom. If she had not become frightened, she could have walked out of the room in the same manner in which she had entered it, especially in view of the fact that there were no obstructions or anything to impede her progress in any way. Therefore, we cannot see where there was any error on the part of the trial court in directing a verdict for defendant because of the lack of a showing of any negligence on the part of

defendant which could be said to be the proximate cause of the injury.

The question of plaintiffs' third theory of negligence then remains—whether or not the presence of the defendant's agent, the janitor, in the unlighted boiler room constituted a fact issue of negligence for the jury. It is our opinion that this question must be answered in the negative because the action of defendant's agent was not a breach of any duty owed to plaintiffs.

The general test of duty presents a question of foreseeability. As Mr. Justice Mitchell stated in Christianson v. Chicago, St. P. M. & O. Ry. Co. 67 Minn. 94, 97, 69 N. W. 640, 641:

"\* \* \* if the act is one which the party ought, in the exercise of ordinary care, to have anticipated was liable to result in injury to others, then he is liable for any injury proximately resulting from it, although he could not have anticipated the particular injury which did happen."

See, also, Robinson v. Butler, 226 Minn. 491, 33 N. W. (2d) 821, 4 A. L. R. (2d) 143.

Under the record here it does not appear that the janitor was moving, speaking, or taking any action of any kind. The only inference which can be drawn is that he was merely present in the unlighted room. In our opinion, no one under similar circumstances reasonably could foresee or anticipate that his mere presence in the unlighted room would result in injury. For the same reason, under the rule stated above regarding the duty of possessors of premises used by business visitors, it could not be said that the mere presence of the janitor constituted a dangerous condition.

The order of the trial court denying plaintiffs' motions for a new trial is affirmed.

Affirmed.