**ACLI INTERNATIONAL COMMODITY SERVICES, INC., Respondent,**

v.

**Gregory B. LINDWALL, Appellant.**

**No. C8-83-1783.**

Court of Appeals of Minnesota.

May 1, 1984.

Gregory B. Lindwall, pro se.

Jerold O. Nelson, Minneapolis, for respondent.

Considered and decided by POPOVICH, C.J., and PARKER and WOZNIAK, JJ., with oral argument waived.

524

## OPINION

PARKER, Judge.

Respondent, a commodities futures broker, sued appellant for the deficit in his trading account. Appellant, an attorney, counterclaimed for fees and commissions paid and for recovery of his trading losses on the ground that futures trading, as practiced by respondent, constitutes gambling. Appellant further claimed he was fraudulently induced to enter into commodities futures trading by respondent and that his account was handled negligently. The trial court granted respondent's motion for summary judgment and this appeal was taken. We also review an earlier order refusing to compel respondent to answer certain interrogatories. We affirm.

## ISSUES

1. Does trading in commodities futures contracts, as practiced by respondent, constitute "gambling"?

2. Did appellant produce sufficient evidence to establish a genuine issue of material fact as to fraud in the inducement to enter into commodities futures trading?

3. Did appellant produce evidence sufficient to establish a genuine issue of material fact as to respondent's negligence in the handling of appellant's account?

4. Did the trial court abuse its discretion in refusing to compel respondent to answer certain interrogatories?

## FACTS

The facts are essentially undisputed. Appellant is an attorney who invested in commodities futures. Respondent is a futures commission merchant registered with the Commodity Futures Trading Commission. On September 10, 1980, appellant executed a Risk Disclosure Statement, a Customer's Agreement, an Authorization to Transfer Funds, and a Non-Hedge Commodity Account Information Letter.

Respondent opened the account to invest in strategic metals. When appellant discovered he could not presently invest in strategic metals, he chose to trade commodities futures contracts. Appellant admits authorizing and approving every trade. The trading began in October 1980 and ended in July 1981.

Some of appellant's trades were profitable; others were not. Respondent's action is based upon oats spread losses. On July 22, 1981, the last trading day in contracts for July delivery, appellant held open oats contracts for July delivery. Appellant had either to buy the commodity with $60,000 cash or to enter off-the-board transactions at prices above market prices. Appellant liquidated his position, which resulted in a net deficit of $3,234 in his account. On July 23, 1981, appellant authorized respondent's account executive to liquidate the remainder of his open oats contracts. This resulted in a deficit of $937.50. The total deficit in appellant's account was $4,171.50. That is the debt upon which respondent sued in District Court.

## DISCUSSION

In reviewing the entry of summary judgment, this court's function is twofold. The court must determine (1) whether there are genuine issues of material fact to be litigated, and (2) whether the trial court erred in applying the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). And, this court must view the evidence most favorably to the party against whom the motion was granted. *Grondahl v. Bulluck*, 318 N.W.2d 240, 242 (Minn.1982).

### I

The Minnesota legislature defined gambling in the criminal code of 1963. In Minn.Stat. § 609.75, subd. 3, certain activities are listed as not constituting gambling. Subdivision 3 states:

The following are not bets:

\* \* \* \* \* \*

(2) a contract for the purchase or sale at a future date of securities or other commodities.

Under the statute, futures trading is specifically listed as non-gambling. Appellant concedes this.

■ Appellant contends that there was no intent to deliver, thus the contract was illegal. Appellant relies on an 1891 case and the committee comments to Minn.Stat. § 609.75 to support his position. The court in *Mohr v. Miesen*, 47 Minn. 228, 49 N.W. 862 (1891), stated that trading in the futures markets without intent of delivery is "generally held to be in the nature of wagers on the future price of the commodity and void by statute or as against public policy." *Mohr*, 47 Minn. at 231, 49 N.W. at 863. The present public policy in Minnesota is evidenced by Minn.Stat. § 609.75, subd. 3(2). Trading commodities futures does not constitute gambling.

■ Even if the statute required delivery, there is no violation as appellant's contract did contemplate delivery. The customer's agreement states in paragraph one, "Orders are to be received and executed with the understanding that actual delivery is contemplated." Appellant read and signed this agreement. In fact, appellant was faced with the necessity of imminent delivery when he ordered his position liquidated. Even if appellant subjectively rejected the prospect of delivery, contrary to the written contract, his own uncommunicated intentions cannot render the respondent's actions unlawful.

## II

Appellant claims respondent (1) induced him to open an account; (2) induced him to deposit $5,000; and (3) misrepresented to him that investments could be made in strategic metals. He alleges that these "inducements" and misrepresentations are tantamount to fraud. Appellant claims that if he had not been told he could invest in strategic metals, he would not have opened an account and therefore would not have lost any money. However, respondent showed that appellant was specifically consulted upon and explicitly authorized each trade that was made with his account. Appellant could have withdrawn his money or simply refused to trade other than in strategic metals.

■ In Minnesota, fraud involves several elements, one of which is that the misrepresentation must be the proximate cause of the injury. *Western Contracting Corp. v. Dow Chemical Co.*, 664 F.2d 1097, 1100–01 (8th Cir.1981). If we assume the ability to invest in strategic metals was a misrepresentation, appellant must show that misrepresentation to be the proximate cause of his damages. As a matter of law, that requirement has not been met; appellant admits he specifically authorized each and every one of his investments in commodities. Lack of reliance breaks the causal chain. The material facts are not disputed and the trial court properly applied the law. Summary judgment was appropriate.

## III

Appellant claims the oats spread losses resulted from respondent's failure to advise him of the risk and that he is, therefore, entitled to maintain his defense and counterclaim based on negligence. Appellant did not show that a genuine issue of material fact existed, nor was it alleged on appeal. "The basic elements necessary to maintain a claim for negligence are (1) duty; (2) breach of that duty; (3) that the breach of duty be the proximate cause of plaintiff's injury; and (4) that plaintiff did in fact suffer injury." *Schmanski v. Church of St. Casimir of Wells*, 243 Minn. 289, 292, 67 N.W.2d 644, 646 (1954) (quoted in *Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149, 157 (Minn.1982).

■ Respondent breached no duty to plaintiff. Appellant was informed of the substantial risk in trading in commodities futures. Appellant read, signed and received a copy of a risk disclosure statement, which reads in part material:

> The risk of loss in trading commodity futures contracts can be substantial. You should therefore carefully consider whether such trading is suitable for you in light of your financial condition. In

wishing to trade, you should be aware of the following:

(1) You may sustain a total loss of the initial margin funds and any additional funds that you deposit with your broker to establish or maintain a position in the commodity futures market. If the market moves against your position, you may be called upon by your broker to deposit a substantial amount of additional margin funds, on short notice, in order to maintain your position. If you do not provide the required funds within the prescribed time, your position may be liquidated at a loss, and you will be liable for any resulting deficit in your account.

There is no genuine issue of material fact and the trial court did not err in its application of the law. Summary judgment was proper.

### IV

■ Appellant brought a motion to compel respondent to answer interrogatories. Respondent had objected to the interrogatories as not reasonably calculated to lead to the discovery of admissible evidence, being oppressive and burdensome, and requesting confidential information. The motion to compel was denied.

Appellant stated that he sought the information to discover additional evidence relating to the issues of gambling, fraud and negligence and to show the motives of respondent. Respondent told appellant that no one else had made a claim against the· broker and respondent also informed appellant that only five percent of purchasers of futures contracts actually take delivery. Appellant has failed to show that the unanswered interrogatories were reasonably calculated to lead to the discovery of admissible evidence.

### DECISION

The decision of the trial court is affirmed. Appellant is ordered to pay $500 in attorney's fees on this appeal.